United States District Court
District of Maine

Clare E. Mundell,

      Plaintiff,

  v.

Acadia Hospital, Corp. et al.

      Defendants.

Civil No. 1:21-cv-00004-LEW

**Plaintiff's Reply in Support of
Motion for Partial Summary Judgment**

After admitting that it paid Dr. Mundell about half as much as her male coworkers for comparable work and that no affirmative defenses apply, Defendant now tries to escape liability by arguing that it would be impossible to pay men and women equally for comparable work without committing fraud, and that this Court should add a "fair market value" affirmative defense to text of the Maine Equal Pay Act. Defendant further argues that it should be excused from paying mandatory liquidated damages because the Maine Equal Pay Act is not about wages. None of these arguments are convincing.

I. **Defendant Waived Any "Implied Preemption" Defense, and In Any Event the Maine Equal Pay Act Is Not Preempted Here.**

Defendant's "implied preemption" argument fails for two independent reasons. **First**, Defendant waived the affirmative defense of preemption by failing to

raise it at any time before filing its opposition to Plaintiff's partial motion for summary judgment. Defendant did not plead preemption as an affirmative defense or otherwise reference preemption anywhere in its March 8 Answer (ECF No. 6), did not amend its Answer to add preemption by the May 25 deadline for amendment of pleadings, and indeed did not assert a preemption defense at any point before the July 27 discovery deadline. Instead, the first notice Dr. Mundell received of any "implied preemption" defense was Acadia's September 22 opposition to summary judgment (ECF No. 15). Acadia waived its "implied preemption" defense by failing to timely plead it. *See* Fed. R. Civ. 8(c) (requiring that responsive pleading set forth enumerated affirmative defenses and "any other matter constituting an avoidance or affirmative defense."); *Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 449 (1st Cir. 1995) (holding defendant waived preemption affirmative defense by failing to plead it in its answer, noting: "[f]ailure to plead an affirmative defense generally results in waiver of the defense and its exclusion from the case.").[1]

**Second**, even if Acadia had not waived its preemption defense, the Maine Equal Pay Act (MEPA) is not preempted by the general anti-fraud laws cited by Defendant. Notably, despite the fact that 49 states now have equal pay laws, Acadia does not cite, and we have not found, a single case holding that the Anti-Kickback Statute, the Stark Law, or the False Claims Act preempt a state equal pay law.[2]

---

[1] Preemption is a waivable affirmative defense when, as here, "a successful preemption defense . . . would dictate a change in the choice of law, but not a change in forum." *Fryer v. A.S.A.P. Fire & Safety Corp.*, 658 F.3d 85, 90 (1st Cir. 2011) (holding that defendant's claim that USERRA preempted state employment laws was a waivable affirmative defense).
[2] Courts have, however, repeatedly **rejected** arguments that the FCA, Stark Law, and Anti-Kickback Statute preempt other state laws. *See, e.g., United States v. Quest Diagnostics*

2

Under Defendant's theory, any employer subject to these general federal anti-fraud laws would be entitled to pay women less than men for comparable work, a plainly absurd and far-reaching result.

Acadia has utterly failed to meet its high burden to show implied preemption.[3] There "is an assumption that the historic police powers of the States," like the State's traditional power to regulate employee compensation at issue here, are not preempted absent a showing that was Congress's "clear and manifest intent." *Ciampi v. Hannaford Bros. Co.*, 681 A.2d 4, 8 (Me. 1996) ("In cases where federal law is said to bar state action in fields of traditional state regulation, such as workers compensation legislation, there is an assumption that the historic police

---

*Inc.*, 734 F.3d 154, 163 (2d Cir. 2013) ("Nothing in the False Claims Act evinces a clear legislative intent to preempt state statutes and rules that regulate an attorney's disclosure of client confidences."); *Marietta Area Healthcare, Inc. v. King*, No. 5:21-cv-25, 2021 WL 1680445, at *4 (N.D.W. Va. Apr. 28, 2021) (holding False Claims Act does not preempt state tort claims); *United States v. Barker*, No. 3:16-CR-516-D, 2017 WL 4167512, at *12 (N.D. Tex. Sept. 20, 2017) (holding Anti-Kickback statute does not preempt state anti-bribery law); *United States ex rel. Uchytil v. Avanade Inc.,* No. C12-2091-JCC, 2015 WL 13886329, at *7 (W.D. Wash. Aug. 27, 2015) ("Federal courts have expressly considered, and rejected, the argument that the False Claims Act preempts state ethical rules governing attorney conduct."); *Fresenius Med. Care Holdings, Inc. v. Francois*, 832 F. Supp. 2d 1364, 1367-68 (N.D. Fla. 2011) (holding Stark Law does not preempt state law on physician referrals); *Boone v. MountainMade Found.*, 857 F. Supp. 2d 111, 114 n.2 (D.D.C. 2012) ("It is worth noting that several courts have considered and rejected the argument that state wrongful discharge claims—statutory or common law—are preempted by the False Claims Act") (citing *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.,* 277 F.3d 936, 945 (7th Cir. 2002) ("There is nothing in [the False Claims Act] to lead us to believe that Congress intended to preempt all state law retaliatory discharge claims based on allegations of fraud on the government."); *Brandon v. Glynn v. EDO Corp.*, 536 F.Supp.2d 595, 608–09 (D. Md. 2008); *Hoefer v. Fluor Daniel, Inc.*, 92 F.Supp.2d 1055, 1059 (C.D. Cal. 2000); *Palladino ex rel. United States v. VNA of S.N.J., Inc.*, 68 F. Supp. 2d 455, 465–74 (D.N.J. 1999)).
[3] *See, e.g.*, *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) (if two plausible readings of a statute are proffered, courts have "a duty to accept the reading disfavoring pre-emption."); *In re EpiPen Direct Purchaser Litig.*, No. 20-CV-0827, 2021 WL 147166, at *18 (D. Minn. Jan. 15, 2021) (". . . [F]ederal preemption itself is an affirmative defense for which Defendants bear the burden of proof.").

powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest intent.") (quotation marks omitted). Federal law "does not preempt state legislation that has a tenuous, remote, or peripheral connection to" the federal law at issue. *Id.* (quotation marks omitted).

There is no showing that Congress had any intent, let alone a "clear and manifest" intent, to preempt state equal pay laws when enacting the anti-fraud statutes relied on by Defendant. None of these three anti-fraud statutes contains an express preemption provision. And if Congress thought that equal pay laws conflicted somehow with the FCA, Stark Law, or Anti-Kickback Statute, it would have said something in its amendments to those laws or to the federal Equal Pay Act, 29 U.S.C. § 206(d), at some point during their long histories. *See Wyeth v. Levine*, 555 U.S. 555, 574 (2009) ("If Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point during the FDCA's 70-year history.").

Defendant's claim that it would be "impossible" to comply with both the federal anti-fraud laws and MEPA is baseless. MEPA simply requires equal pay for comparable work unless an enumerated defense applies. Paying men and women equally for comparable work is **consistent** with anti-fraud principles, because it ensures that wages are based on employees' skills, effort, and responsibilities. *See* 26 M.R.S. § 628. Moreover, Defendant's claim that their use of a "fair market value" approach was necessary to comply with federal anti-fraud laws is undercut by their own admission that they lowered Drs. DP and FK's salaries to $57 per hour

4

following their hospital-wide compensation review. ECF No. 6 (Def.'s Ans.) ¶ 2. If there is any suggestion of overpayment for services in the record, it is for Drs. DP and FK, not for Dr. Mundell.

Some remote possibility of conflict between MEPA and the federal anti-fraud laws is far from sufficient for the Court to find conflict preemption. *See English v. Gen. Elec. Co.*, 496 U.S. 72, 85 (1990) ("We have no doubt, for instance, that the application of state minimum wage and child labor laws to employees at [the regulated entity] would not be pre-empted, even though these laws could be said to affect tangentially some of the resource allocation decisions that might have a bearing on [the subject of the federal law]."). Indeed, courts have repeatedly rejected arguments that Maine's wage laws are preempted by other federal laws. *See, e.g., Cooper v. Springfield Terminal Ry. Co.*, 635 A.2d 952, 954 (Me. 1993) (holding that Railway Labor Act did not preempt employees' wage claims under 26 M.R.S. § 629 because "[l]ike similar federal labor statutes, it does not preempt state minimum standards legislation that regulates working conditions.") (quotation marks omitted); *Beckwith v. United Parcel Serv. Inc.*, 889 F.2d 344, 347 (1st Cir. 1989) (holding that the National Labor Relations Act did not preempt wage claims under Section 629).

## II. A "Fair Market Value Approach" Is Not a Viable MEPA Defense.

Defendant's attempt to avoid liability by asserting a "fair market value approach" to compensation plainly fails. Importantly, as Defendant admits, the burden-shifting framework for Dr. Mundell's equal pay claims is different from the

5

burden-shifting framework for Title VII and Maine Human Rights Act claims: in equal pay claims, the plaintiff bears the initial burden to establish each element of her prima facie case, but once satisfied, the burden of proof (not just the burden of production) shifts to the defendant to justify the pay differential under one of the enumerated statutory affirmative defenses. ECF No. 15 at 11, n. 4. Here, Dr. Mundell established her prima facie case, and Defendant admits that no statutory defenses apply. ECF No. 13 at 5. That is the end of the inquiry.

Unlike disparate treatment claims under Title VII and the MHRA, equal pay claims do not require the plaintiff to prove discriminatory intent. A disparate treatment plaintiff ultimately bears the burden to prove that their employer intentionally treated them worse because of a protected characteristic. *See Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1740 (2020). An equal pay plaintiff does not. Courts have repeatedly described equal pay laws imposing a form of "strict liability," because they do not require the plaintiff to prove discriminatory intent by the employer. *See, e.g., Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992) ("The Equal Pay Act prescribes a form of strict liability: Once the disparity in pay between substantially similar jobs is demonstrated, the burden shifts to the defendant to prove that a factor other than sex is responsible for the differential. If the defendant fails, the plaintiff wins. The plaintiff is not required to prove discriminatory intent on the part of the defendant.") (quotation marks omitted)[4]; *Jewett et al. v. Oracle Am., Inc.*, No. 17-CIV-02669, at *8 (Sup. Ct. Ca.

---

[4] The federal Equal Pay Act provides a "factor other than sex" affirmative defense for employers, *see* 29 U.S.C. § 206(d)(1)(iv). MEPA does not, *see* 26 M.R.S. § 628.

Cnty. San Mateo Apr. 26, 2021) ("the [California] EPA is a 'strict liability' statute, i.e., plaintiffs need not prove discriminatory intent."); *Jancey v. School Comm.*, 658 N.E.2d 162, 170 (Mass. 1995) ("[T]he [Massachusetts] statute on its face creates a form of strict liability").[5]

Defendant is incorrect that the words "discriminate" and "on the basis of sex" in MEPA mean the plaintiff must prove intent. The federal Equal Pay Act likewise uses the words "discriminate" and "on the basis of sex," 29 U.S.C. § 206(d)(1), yet courts have long held that "[a]n EPA plaintiff need not prove that the employer acted with discriminatory intent to obtain a remedy under the statute." *E.E.O.C. v. Md. Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018); *see also Stopka v. All. of Am. Insurers*, 141 F.3d 681, 685 (7th Cir. 1998) ("The EPA does not require proof of discriminatory intent."). MEPA, like the federal EPA, does not require the plaintiff to prove intentional discrimination.

Contrary to Defendant's claim, this does not mean automatic liability every time an employer pays a man and a woman differently. Plaintiffs bringing MEPA claims bear the initial burden to prove not only that they were paid less than an

---

[5] Guidance from the Massachusetts Attorney General's Office concerning their equal pay law, which is similar to Maine's, explains: "an intent to discriminate based on gender is not required to establish liability under the law." And later, in "Q&A" form: "Q: Does it matter whether an employer intends to discriminate against employees of one gender by paying them less for comparable work? No. Under MEPA, intent is irrelevant. An employer will be liable for paying employees of one gender less than employees of another gender who perform comparable work regardless of whether or not it intended to do so, unless the pay differential can be justified by one of the [affirmative defenses] listed above." Office of the Mass. Attorney General, "An Act to Establish Pay Equity: Overview and Frequently Asked Questions" (last updated March 1, 2018) (available at https://www.mass.gov/files/documents/2018/03/01/AGO%20Equal%20Pay%20Act%20Guidance.pdf).

7

employee of the opposite sex in the same establishment, but also that they were paid less for "comparable work on jobs that have comparable requirements relating to skill, effort and responsibility." 26 M.R.S. § 628. Here, Defendant admitted each element of Plaintiff's prima facie case: Acadia paid Dr. Mundell less than Drs. DP and FK for comparable work in a job with comparable requirements relating to skill, effort, and responsibility. SMF ¶ 14.[6] Defendant's argument that it should escape liability because it purportedly paid Dr. Mundell less under a "fair market value approach" is a non-starter, as that is not one of the enumerated defenses in MEPA.[7]

### III. Dr. Mundell Is Entitled To Her Unpaid Wages and Liquidated Damages Under the Penalties Provision of the Maine Wage Law.

Acadia's argument that Dr. Mundell is not entitled to the remedies set forth in Section 626-A for her unequal pay claim is flatly wrong, for three key reasons.

**First**, although Defendant repeatedly tries to conflate Dr. Mundell's unequal pay claim with her intentional discrimination claim, the only claim on which she moved for summary judgment is her claim for unpaid wages under MEPA, 26 M.R.S. § 628. In determining what remedies she is entitled to, the Court applies the plain language of Section 628 and the corollary "Remedies" provision, Section 626-

---

[6] Defendant's assertions about Dr. DP's reputation and connections, ECF No. 15 at 3, are irrelevant, since Defendant already admitted that DP and Dr. Mundell performed comparable work.
[7] Moreover, this rationale would not make sense, even if it was advanced as a "reasonable factor other than sex" defense to a (hypothetical) federal EPA claim. Defendant admits it lowered Drs. DP and FK's salaries in 2019 following a compensation review, strongly suggesting it paid them *over* fair market rate for years. DSMF ¶¶ 18-20.

8

A, and liberally construes any ambiguities to further the Maine wage law's remedial purpose of protecting workers.[8]

Based on these well-established canons of statutory construction, Dr. Mundell is plainly entitled to liquidated damages under Section 626-A. "The first paragraph of Section 626-A explicitly states that it is applicable to violations of" the sections listed in the statute, "while the second paragraph provides for the aforementioned penalties in any action brought under the subchapter of which" those specified statutory sections are "a part." *Cooper v. Springfield Terminal Ry. Co.*, 635 A.2d 952, 955 (Me. 1993); *see Noll v. Flowers Foods, Inc.*, No. 1:15-CV-00493-LEW, 2021 WL 904859, at *5 (D. Me. Mar. 9, 2021). Here, Section 626-A's first paragraph expressly includes Section 628 in its list of statutory provisions, and Section 628 is "a part" of "the subchapter" referenced in Section 626-A's second paragraph. *See* Title 26, Chapter 7, Subchapter 2: Wages and Medium of Payment, 26 M.R.S. §§ 621-A – 629.

Defendant resorts to the surprising argument that an unequal pay claim is not a claim for unpaid wages, but both common sense and the plain statutory

---

[8] As the First Circuit has reiterated in recent years, "[t]he default rule of construction under Maine law for ambiguous provisions in the state's wage and hour laws is that they 'should be liberally construed to further the beneficent purposes for which they are enacted.' The opening of the subchapter of Maine law containing the overtime statute and exemption at issue here declares a clear legislative purpose: 'It is the declared public policy of the State of Maine that workers employed in any occupation should receive wages sufficient to provide adequate maintenance and to protect their health, and to be fairly commensurate with the value of the services rendered.' 26 M.R.S.A. § 661." *O'Connor v. Oakhurst Dairy*, 851 F.3d 69, 79 (1st Cir. 2017) (quoting *Dir. of Bureau of Lab. Standards v. Cormier*, 527 A.2d 1297, 1300 (Me. 1987)); *Giguere v. Port Res. Inc.*, 927 F.3d 43, 50 (1st Cir. 2019) ("We are also mindful of the interpretive rule that ambiguities in the exceptions to the FLSA's general rules should be resolved in favor of employees.").

language refute that. Section 628 is part of the subchapter entitled "Wages and Medium of Payment," the statutory provision itself is titled "Equal pay," and it prohibits employers from "paying wages to any employee . . . at a rate less than the rate at which the employer pays any employee of the opposite sex for comparable work . . . ." When an employer violates MEPA by paying a female employee less (here, only about half of) what it pays a comparable male employee, the remedy is the amount of the wage differential between the male and female comparable employees.[9] Courts have long applied this straightforward method to calculate unpaid wage remedies under the federal Equal Pay Act, which—like the Maine law—adopts the remedies for unpaid wage claims as the remedial framework for unequal pay claims. *See, e.g., Thompson v. Comm'r*, 866 F.2d 709, 712 (4th Cir. 1989); *Thompson v. Sawyer*, 678 F.2d 257, 278 (D.C. Cir. 1982) ("An employer who violates the Equal Pay Act is subject to the remedial provisions of the Equal Pay Act's statutory parent, the FLSA. For relief purposes, the FLSA does not distinguish between wages that were sexually discriminatory and wages that were deficient for other reasons, such as a failure to reach the current minimum.").[10]

---

[9] Defendant quibbles with whether Dr. Mundell is entitled to the difference between her $50/hour pay and the highest-paid comparable male employee ($95/hour) or the lowest paid comparable male employee ($90/hour). ECF No. 15, at n.1. Notably, Acadia admitted that Dr. Mundell performed comparable work to her male coworker making $95, so he would be an appropriate comparator. SMF ¶14. But, Plaintiff has not moved for summary judgment on the issue of the precise calculation of the actual unpaid wages and benefits owed to Dr. Mundell, so the Court need not decide this issue.

[10] "Where definitional issues arise under the Maine minimum wage and overtime law," the Court "'may look to analogous federal statutes, regulations, and case law for guidance.'" *Saunders v. Getchell Agency Inc.*, No. 1:13-CV-00244-JDL, 2014 WL 12539643, at *9 (D. Me. Dec. 12, 2014), report and recommendation adopted, No. 1:13-CV-00244-JDL, 2015 WL 1292594 (D. Me. Mar. 23, 2015) (quoting *Gordon v. Maine Cent. R.R.*, 657 A.2d 785, 786 (Me. 1995)).

**Second**, Defendant does not cite a single case under either the federal EPA or any of the 49 state equal pay laws holding what Defendant urges this Court to hold: that a claim for unequal pay is not a claim for unpaid wages. And the few cases relied on by Defendant do not support its novel argument, but instead bolster Plaintiff's position. The Law Court's decision in *In re Wage Payment Litigation*, relied on heavily by Defendant, reached the commonsense conclusion that when employees were paid wages "in full" on a bi-weekly basis, rather than the weekly basis proscribed by then-existing Section 621, there were no "unpaid wages." 2000 ME 162, ¶ 16, 759 A.2d 217, 224 ("Accordingly, a wage paid in full, but paid late, is not unpaid under section 621.") (quotation marks omitted). But this is not a late-payment case. Dr. Mundell was **never** paid her wages in full, but instead was underpaid by nearly 50% compared to her male counterparts, whom Defendant admits were performing comparable work.

The other decision repeatedly cited by Defendant, *Beckwith v. UPS*, actually supports Dr. Mundell's position. 889 F.2d 344 (1st Cir. 1989). In *Beckwith*, the First Circuit affirmed the district court's holding that an employee was not entitled to Section 626-A liquidated damages on his Section 629 claim for unlawful payroll deductions. *Id.* at 350–51. But as the *Beckwith* Court noted, its reasoning would apply very differently to Section 628, MEPA, which unlike Section 629 lacks its own penalty provision:

> None of the sections listed in the first paragraph other than sections 626 and 629 have their own penalty provisions, and the legislature may have intended the § 626–A remedies to be available when, and if, appropriate for violations of those sections. For example, an employer who violates the equal

11

> pay requirements in 26 M.R.S.A. § 628 could be required to pay the affected employees liquidated damages and attorney's fees as provided by § 626–A.

*Id.*; *see also Noll v. Flowers Foods, Inc.*, No. 1:15-CV-00493-LEW, 2021 WL 904859, at *6 n.7 (D. Me. Mar. 9, 2021) ("My construction of the statute in relation to Plaintiff's 'unlawful deduction' theory is consistent with both *Cooper* and *Beckwith*.").

**Third**, Defendant's argument that liquidated damages for MEPA violations would be "financially devastating" and lead to "absurd and unreasonable results" rests on basic misunderstandings of the statute. Employers are not liable for unpaid wages and liquidated damages going back "decades," as Acadia suggests, because the Maine wage law is subject to Maine's general six-year statute of limitations for civil actions. *See* 14 M.R.S. § 752; *Affo v. Granite Bay Care, Inc.*, No. 2:11-CV-482-DBH, 2013 WL 2383627, at *15 (D. Me. May 30, 2013) (applying Maine's general six-year statute of limitations to Maine wage claims). And employers are not liable for liquidated damages for every pay inconsistency among employees of the opposite sex. Instead, employers are liable **only** if an employee can clear the substantial hurdle of proving that she was paid less "for comparable work on jobs that have comparable requirements relating to skill, effort and responsibility," and none of the affirmative defenses apply. 26 M.R.S. §§ 626-A, 628.

Moreover, the Law Court and the First Circuit have repeatedly held that treble damages are the remedy for wage violations under the Maine Wages and

Medium of Payment subchapter, of which Section 628 is a part.[11] In doing so, the courts have emphasized the Maine wage law's "remedial" and "broadly protective" purpose, and have rejected claims that these treble damages are punitive. *Giguere v. Port Res. Inc.*, 927 F.3d 43, 50, 51 (1st Cir. 2019) (quoting *Bisbing v. Me. Med. Ctr.*, 2003 ME 49, ¶¶ 5-7, 820 A.2d 582 (Me. 2003)). If treble damages for each of these violations of Maine's wage laws are reasonable and serve the law's "broadly protective purpose," then it is difficult to understand why treble damages for violations of Maine's equal pay provision would be "absurd."

Finally, Defendant's observation that employees "may not realize that they are being paid an unequal wage for years," while true, is an argument for stronger unequal pay remedies and more transparency, not less. Employees may be unaware of pay inequities, but employers have full knowledge of what they pay their employees and whether, for example, they are paying female employees half what they pay comparable male employees. The employer has the responsibility to pay its employees equally for comparable work or, if it chooses not to, risk liability for unpaid wages and liquidated damages. Employers do not get a windfall because they have kept their employees in the dark for years about glaring pay inequities.[12]

---

[11] *See, e.g., Giguere v. Port Res., Inc.*, 927 F.3d 43, 51 (1st Cir. 2019) (holding employees entitled to treble damages for unpaid sleep time in violation of Section 629); *Bisbing v. Me. Med. Ctr.*, 2003 ME 49, ¶¶ 5-7, 820 A.2d 582 (Me. 2003) (analyzing "plain language of the statute" and finding workers entitled to treble damages based on employer's failure to pay accrued vacation pay upon termination in violation of Section 626); *Cooper v. Springfield Terminal Ry. Co.*, 635 A.2d 952, 955 (Me. 1993) (holding that workers were entitled to treble damages based on employer's failure to pay them for training time in violation of Section 629).

[12] Defendant devotes several pages to repeating the Maine Department of Labor's rules and procedures concerning equal pay claims, see Opp. 15-16, but that regulatory framework

13

## Conclusion

Because the undisputed facts show that Acadia paid Plaintiff less than employees of the opposite sex for comparable work and none of the statutory defenses apply, Acadia owes Dr. Mundell the amount of her unpaid wages, plus twice that amount as liquidated damages. Plaintiff respectfully requests that this Court grant summary judgment on her Maine Equal Pay Act claim.

Respectfully submitted,

Date: October 13, 2021

/s/ Valerie Z. Wicks
Valerie Z. Wicks, Esq.
Johnson, Webbert & Garvan, LLP
160 Capitol Street
Augusta, Maine 04332-0079
Tel: (207) 623-5110
vwicks@work.law

/s/ Carol J. Garvan
Carol J. Garvan, Esq.
Johnson, Webbert & Garvan, LLP
160 Capitol Street
Augusta, Maine 04332-0079
Tel: (207) 623-5110
cgarvan@work.law

*Attorneys for Plaintiff*

---

does not apply here and, in any event, DOL rules cannot trump the plain language of the statute. For example, the DOL rules establish a procedure for investigating equal pay complaints filed with the Bureau of Labor Standards and seeking voluntary compliance agreements, but there is no such administrative complaint at issue here. And the rules state a presumption of compliance if the employer has completed a "self-evaluation" meeting certain requirements, but Acadia has not even suggested that it completed such a "self-evaluation," and again this applies to claims filed with the Bureau of Labor Standards (which no one did here).

## Certificate of Service

I hereby certify that on October 13, 2021, I caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                    */s/ Valerie Z. Wicks*
                                    Valerie Z. Wicks